[Civ. No. 2407.   Third Appellate District.—April 25, 1922.]

J. F. HELMS et al., Respondents, v. PACIFIC MILL & TIMBER CO. (a Corporation), Appellant.

[1] PLEADING—CONTRACT BY PARTNERS—ACTION ON AS INDIVIDUALS—EVIDENCE—VARIANCE—FINDING.—Where, in an action to recover the agreed price of certain grape stakes sold to defendant, the plaintiffs' names appear in the title of the complaint as individuals merely, but in the body of complaint it is alleged that the two plaintiffs, as copartners, manufactured the grape stakes, that thereupon each became the owner of one-half thereof, and that one of them, acting for both, sold them to defendant, while the evidence shows that the contract for the sale of the grape stakes was executed by plaintiffs as copartners, the variance is not such as to mislead the defendant and, therefore, is not to

be deemed material, but the court may direct the fact to be found according to the evidence.

[2] ID. — FICTITIOUS NAME — NONCOMPLIANCE BY COPARTNERS — WAIVER OF OBJECTION.—The question of noncompliance by plaintiffs, as copartners, with the requirements of the Civil Code as to filing and publication of a certificate of doing business under a fictitious name cannot be raised for the first time on appeal.

[3] SALES — PARTIAL DELIVERIES—TIME OF PAYMENT—CONSTRUCTION OF CONTRACT.—Where a contract for the sale of a large number of grape stakes provides for shipments to the purchaser "at instructions to follow," and that provision, construed in the light of the attending circumstances and the manner in which the contract is carried out by the parties in so far as performed, justifies the inference that the parties understood at the time the contract was executed that a considerable time might elapse between the first and the last deliveries thereunder, the vendors are entitled to payment upon each delivery as ordered.

[4] ID.—REFUSAL TO MAKE DELIVERIES—COUNTERCLAIM FOR DAMAGES. The plaintiffs having been justified in refusing to make further deliveries of grape stakes until they were paid for those already furnished, the defendant had no just cause of counterclaim against them because of damage suffered by defendant by reason of their refusal to make such further deliveries.

APPEAL from a judgment of the Superior Court of Humboldt County.   Denver Sevier, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Sterling Carr and E. W. Wilson for Appellant.

Puter & Quinn and H. L. Ford for Respondents.

FINCH, P. J.—Plaintiffs, alleging that they were copartners, sued for the recovery of the agreed price of certain grape stakes sold to defendant.   In appellant's opening brief it is argued that the court erred in denying defendant's motion to strike out the fourth amended complaint, but in the reply brief it is admitted that such objection is not tenable on this appeal.

[1] It is urged that there is a fatal variance between the allegations of the complaint and the proofs, in that plaintiffs sue as individuals and allege a contract made by them as individuals while the evidence shows that the con-

tract was executed by the partnership. Plaintiffs' names appear in the title of the complaint as individuals merely, but in the body of the complaint it is alleged that the plaintiffs, as copartners, manufactured the grape stakes; that thereupon each became the owner of one-half thereof, and that Helms, acting for both, sold them to defendant. While the pleading is not a model, it is difficult to see in what manner defendant has suffered prejudice from any defect therein. A variance is not "to be deemed material, unless it has actually misled the adverse party to his prejudice." (Code Civ. Proc., sec. 469.) "Where the variance is not material, as provided in the last section, the court may direct the fact to be found according to the evidence." (Code Civ. Proc., sec. 470.) The court found that the contract as executed by plaintiffs as copartners.

[2] In appellant's brief it is said that if the partnership name had been alleged and "if the same was fictitious and no certificate had been filed as required by the Civil Code," the defendant could have alleged such failure "and the matter would then have been delayed until the filing and publication of such certificate, if plaintiffs elected so to act." The answer in no manner raised the question here urged and the evidence does not show under what name the partnership business was conducted or whether any certificate was filed. The record does not disclose that such objection was made at any stage of the case in the trial court, the contention there urged, on motion for nonsuit, being that the cause of action proved "is a partnership demand, and the action is prosecuted in their individual names." The question cannot be raised for the first time on appeal.

It is contended that the plaintiffs failed to perform their part of the contract. The contract consisted of a written order by the defendant and its acceptance on behalf of plaintiffs. The order reads as follows:

"Ship to ourselves at instructions to follow. Prices are F. O. B. Humboldt points Eureka rate. 100,000 2x2x6 No. 1 split redwood grape stakes pointed          23.00 Please sign and return promptly to us at San Francisco."

Six carloads of grape stakes, amounting to a total of 50,490, were shipped as ordered from time to time during a period of seventeen days, from September 25 to October

11, 1917. The shipments were made direct to defendant's customers as ordered by its agent at Eureka. It does not appear when defendant next ordered a shipment of the stakes, but its president testified that he made several demands for delivery after October, 1917. Plaintiffs refused to make further deliveries until paid for the stakes furnished, and defendant declined to make payment, claiming that no payments were due until the entire 100,000 stakes were delivered. Nielson testified: "We made a contract with the defendant for the sale of 100,000 redwood grape stakes, and there was present Helms, myself and Herrick. . . . I don't remember when they were to be delivered, but not all at once. They were to be delivered at several times, we could not deliver all at once." Herrick was the Humboldt County representative of defendant. Nielson testified relative to the failure of defendants to make payment as follows: "They said they would send money up time and again, but it failed to come. . . . I was present when Helms and Herrick talked over the failure of the defendant to pay. The amount of the conversation was that Herrick told Helms not to ship any more until they made him a payment. . . . Herrick said nothing to the effect that they would not pay anything till they got the other part of the shipment." Witnesses for the defendant contradicted much of Nielson's testimony, but it was for the trial court to decide whom to believe.

[3] The written contract provided for shipments "at instructions to follow." This provision, construed in the light of the attending circumstances and the manner in which the contract was carried out by the parties in so far as performed, justifies the inference that the parties understood at the time the contract was executed that a considerable time might elapse between the first and the last deliveries thereunder. The defendant might, at its discretion, have postponed the last delivery for months. Under the circumstances shown, it would be unreasonable to hold that the parties intended to make the time of payment dependent upon the will of the purchaser. It must be held that the plaintiffs were entitled to payment upon each delivery as ordered. (*Veerkamp* v. *Hulburd C. & D. Co.*, 58 Cal. 229 [41 Am. Rep. 265] ; *United Canneries Co.* v. *Seelye,* 48 Cal. App. 747 [192 Pac. 341] ; *Morton* v.

*Clark,* 181 Mass. 134 [63 N. E. 409] ; *Dees* v. *Self,* 165 Ala. 229 [51 South. 735] ; *Press* v. *Vandergrift,* 165 App. Div. 180 [150 N. Y. Supp. 238] ; *Neal* v. *Shewalter,* 5 Ind. App. 147 [31 N. E. 848] ; *People* v. *Grant,* 138 Mich. 60, [100 N. W. 1006].)

[4] By way of counterclaim, the defendant alleged damages in the sum of $198.04 by reason of plaintiffs' failure to deliver the remainder of the grape stakes. Since the plaintiffs were justified in refusing to make further deliveries until paid for the stakes furnished, the defendant had no just cause of counterclaim.

The defendant filed a cross-complaint against plaintiff Helms, praying for damages alleged to have been suffered by reason of his failure to deliver certain railroad ties in accordance with the terms of a contract between them. By written contract, dated January 15, 1917, Helms agreed to sell to the defendant "all the 6x8 split Rwd. railroad ties I make during the year 1917 at 36c apiece, . . . minimum quantity to be delivered 30,000 by January 1st, 1918." The contract further provided: "The Pacific Mill and Timber Company agree to advance $1300.00 to be deducted from the first shipment. I agree to put up a bond of $2,000 which will be satisfactory to the Pacific Mill and Timber Company." Helms was unable to furnish the required bond and on August 13, 1917, Helms and defendant agreed to reduce the number of ties to 5,000 and defendant agreed to advance $500 on the contract and took an assignment of Helms' right in and to all 6x8 ties owned by him at that time, Helms agreeing to promptly manufacture and deliver to defendant such additional ties as, added to those on hand, would, "at the price listed in the contract already entered into as aforesaid, fully compensate party of the second part for said advance of $500.00." Helms delivered 1605 ties under this contract which, at the contract price, amounted to more than the $500 advanced. He thereupon refused to make any further deliveries unless defendant would pay for each carload as delivered. What has been said relative to the contract for grape stakes is equally applicable here. From the provisions of the contract it appears that the ties were to be delivered from time to time as made throughout the year. Helms' inability to furnish a bond and the provision for

an advancement to him of $500 on the contract price indicate that the parties understood that his financial ability to carry out his part of the contract was dependent upon receipt of payment on delivery of each shipment.

The evidence supports the court's findings in favor of the plaintiffs on their complaint and against the defendant on its counterclaim and cross-complaint.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 22, 1922.

All the Justices concurred.

Shurtleff, J., was absent and Richards, J., *pro tem.*, was acting.